OLSEN v. NORTH PACIFIC LUMBER CO.

(Circuit Court of Appeals, Ninth Circuit. November 3, 1902.)

No. 726.

1. APPEAL—QUESTIONS REVIEWABLE ON SECOND APPEAL—LAW OF CASE.
   Where the action of a trial court in a certain respect was specifically assigned as error in the appellate court, and was approved, at least by implication, the trial court is justified in following the same course on a second trial, and its action in so doing will not be again reviewed on a second appeal.

2. INJURY OF SERVANT—NOTICE OF STARTING MACHINERY—CUSTOMARY MANNER OF OPERATION.
   One employed as off-bearer in a sawmill, his duty being to remove the hooks from the log or cant after it has been placed on the carriage, is not entitled to notice when the carriage is about to start, where it is uniformly started as soon as the hooks are removed, and he has been engaged at the work a sufficient length of time to know such fact.

3. INSTRUCTIONS—CONFORMITY TO ISSUES.
   Where the complaint, in an action by a servant against the master to recover for an injury, alleged that such injury occurred through the

negligence of a fellow servant who was "habitually careless and negligent," which fact was known to defendant, and plaintiff introduced evidence of other alleged acts of negligence to sustain such allegation, it was not error to charge that to authorize a recovery the jury must find that the fellow servant was habitually careless, and that defendant knew or should have known such fact.

In Error to the Circuit Court of the United States for the District of Oregon.

John H. Mitchell, Watson & Beekman, and E. Mendenhall, for plaintiff in error.

Dolph, Mallory, Simon & Gearin and Rufus Mallory, for defendant in error.

Before GILBERT and MORROW, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. This is an action brought against the defendant in error by the plaintiff in error to recover damages for injuries which he sustained while in the employment of the defendant in error in its lumber mill. In the complaint the defendant in error is charged with negligence in retaining in its service one Riley Rearick, a fellow servant with the plaintiff in error. On the day when the accident occurred Rearick was the sawyer in charge of the "pony saw," and in connection therewith operated a steam derrick, by means of which logs or cants which had been sawed into proper shape were lifted from the floor of the mill and placed upon a saw carriage, where they were sawed into lumber. The derrick lifted the logs or cants by means of chains, on the ends of which were hooks which grappled them. The plaintiff in error assisted in this operation in the capacity of second off-bearer. It was his duty, after the cants had been lifted from the floor and placed upon the carriage preparatory to being sawed into lumber, to detach the hooks from the cants. When the cants were free it was the duty of Rearick to start the carriage toward the saw. On the occasion of the accident a cant had been placed on the carriage, and the plaintiff in error had removed the hooks from the cant, when Rearick caused the carriage to start; but the plaintiff in error at that time had his foot upon the saw carriage in such a position that in the forward movement of the carriage his foot was caught and crushed. In his complaint he alleges that Rearick was habitually careless and negligent in the performance of his duty as sawyer; that the defendant in error knew that fact, and negligently retained him in its employment; and that the defendant in error was further negligent in not giving proper instructions and in not providing suitable rules for the conduct of Rearick in the discharge of his duty, and for not exercising reasonable diligence and care in inquiring into and supervising his conduct as such sawyer in its employment. The case comes to this court for the second time, error being assigned to the ruling of the court upon the second trial in admitting certain evidence and in giving and refusing certain instructions to the jury.

It is contended that the court erred in permitting the jury to view the premises where the accident occurred, and to see the machinery of the mill in operation. It is not contended that the jury were in fact

misled, or that any experiment was made for their enlightenment, or that the machinery was operated in any manner different from the usual method, or that the jury saw anything other than the machinery as it was in its ordinary, continuous, daily operation; but authorities are cited to sustain the proposition that to permit the jury to view the operation of the machinery which occasioned the injury which is the subject of the action is to permit the jury to take evidence outside of court, and in the absence of parties and counsel, and is error, for the reason that it affords an opportunity to the party charged with negligence to so operate the machinery as to mislead the jury in his favor. We do not think that this question is now before us. The same error was assigned when the case was formerly in this court. Olsen v. Lumber Co., 40 C. C. A. 427, 100 Fed. 384. It there appeared that not only had the court permitted the jury to view the machinery in operation, but it was shown that at the time when the view was had Rearick was in charge of the operation. In disposing of the error so assigned, this court, by McKenna, circuit justice, said: "We are not prepared to say that a view of a scene of an occurrence may not include machinery in operation. To permit the operation of the machinery, however, by the persons whose care or skill or duty is in question, is seriously disputable." We regard this utterance of the court as affirming the action of the trial court, and as expressing the opinion that it was not deemed error under the statute of Oregon to permit a view of the scene of an accident, together with a view of the operation of the machinery in connection with which the accident occurred. The question was directly presented to the court for adjudication, and, while the opinion of the court may not have been expressed in such clear and definite language as to constitute a precedent upon the point presented, it was, we think, sufficient for the guidance of the trial court upon the second trial. The circuit court upon the second trial (106 Fed. 298) so understood it, and upon deciding the motion for a new trial remarked: "Under no circumstances should I feel warranted, upon a second trial, in departing from the course pursued in the former trial, where that course had been a ground of objection on appeal, and in respect to which this court, if not sustained, had at least not been overruled nor criticised." We think the trial court was justified in regarding the decision of this court as settling the law of the case for its guidance upon a second trial, and, if so, it was not error to follow it, nor are we now required to enter upon a consideration of the grounds upon which the former opinion of this court was based.

The plaintiff in error earnestly contends that the defendant in error by its answer admits its negligence as it is charged in the complaint. The argument is that inasmuch as the complaint alleged that Rearick owed an active duty to give the plaintiff in error notice or warning before starting the saw carriage, and the defendant in error in its answer denied that Rearick owed such duty but at the same time admitted that the plaintiff in error was entitled to such notice, it by implication admitted that Rearick did not know that he owed plaintiff in error the duty of giving such notice, and that the defendant in error was aware of his want of such knowledge, "for

if it was not his duty he could not have supposed that it was, and the defendant in error could not have supposed that he did"; and it is contended that actual lack of knowledge on the part of Rearick that such was his duty, with notice thereof to the defendant in error, rendered Rearick incompetent and the defendant in error negligent. In brief, the argument is that because the defendant in error admitted that the plaintiff in error was entitled to notice, but denied that it was Rearick's duty to give such notice, it admitted by implication that Rearick was negligent, and that it knew that he was. The defect of the argument is that it construes the admission that the plaintiff in error was entitled to notice into an admission that it was Rearick's duty to give it. It does not follow, from the denial and the admission contained in the answer, that Rearick owed an active duty to give notice to the plaintiff in error of the starting of the carriage, that Rearick was negligent, or that the defendant in error knew that he was. The defendant in error in its defense to the action assumed the position that, although the plaintiff in error was entitled to notice of the starting of the carriage, Rearick owed no active duty to give the signal thereof. This cannot be construed as an admission that Rearick himself so understood his duty. Notwithstanding the admissions of its answer, the defendant in error would not have been precluded from showing, if it could have shown it, that Rearick did in fact habitually give notice to the off-bearer before starting the carriage. The admission of the answer, moreover, was followed by the averment that the method of the operation was itself notice to the off-bearer. It alleged that in the operation of the steam derrick and the saw carriage it was known and understood by all employed therein that the removal of the hooks from the cant was the signal to start the saw carriage forward; that it was notice to Rearick that the work of the off-bearer was completed; and it was notice to the off-bearer that the carriage would be started. There was evidence to sustain this allegation. There was some evidence contradicting it, it is true, but with the weight of the evidence we are not concerned. It would seem that the performance of a visible act, such as the removal of the hooks from the cant, leaving it free to move forward on the saw carriage, was, in the nature of things, a sufficient notice to the off-bearer. It was his duty to detach the hooks, and he had the best of opportunities for knowing that when that was done the carriage would be started. That was all the notice he or any one had ever had, and he must be held to have understood and accepted the risks of his employment in the manner in which the work was carried on. He had been employed for some months in and about the mill, but had been second off-bearer to Rearick's saw less than two days when the accident occurred. In that time, however, he had removed the hooks and had seen the saw carriage start from 12 to 20 times every hour. In view of these considerations, it must be held that there was no error in the refusal of the court to charge the jury that it was one of the duties of Rearick's position as sawyer to look out for the plaintiff in error, or to give him reasonable notice or warning before starting the moving of the saw carriage, or in instructing the jury, in substance, that there was nothing in the

case tending to show that it was Rearick's duty to give particular notice that the carriage was about to start. The question both of Rearick's duty in the premises and that of the defendant in error was under consideration when the case was first in this court. It was then held that the contention that the defendant in error should have directed Rearick, as sawyer, by rules and regulations, to observe care to the plaintiff in error, as off-bearer, could not be sustained. Said the court:

"To observe such care was essentially Rearick's duty, assumed in and by his employment. The business was not complex. There was no evidence that it was customary in sawmills to direct employés by special rules, and it could not be so held as a matter of law or submitted to the jury to decide without evidence. In complex employments like railroads rules have been held to be necessary. To require them in the simpler employments would only embarrass them, without useful effect."

This was said with reference to the evidence in the record, which showed then, as it does now, that no rules had been given Rearick by the defendant in error, and that no notice had been given the off-bearer or other employés of the starting of the saw carriage other than the removal of the hooks from the cant. The former decision, of this court can be regarded in no other light than as holding that, although plaintiff in error was entitled to timely notice of the starting of the saw carriage, he was not entitled to notice other than that which was in fact given, and which was in accordance with the usual practice and method of operating the machinery in the mill. On the first trial of the case in the circuit court the jury was instructed upon this general subject in the following words:

"Something has been said as to the duty of the company to provide rules and regulations. There is no testimony proper for your consideration tending to show that in this particular case there was any duty devolved upon the mill company to provide rules and regulations as to how that saw should be started. The question of negligence in starting this saw, broadly, is submitted to you for your judgment as reasonable men. It is claimed that the nature of that employment is such that the employés were bound to take notice that when the cant was upon the carriage and the hooks were loosened the carriage was to start, and that the employés had notice of that from the manner in which the mill was being operated; that the mill was operated continuously in that way, from month to month and from year to year, and for at least two or three days' time during which this plaintiff operated there as second off-bearer; that he knew and saw that that was the way the mill was operated,—when the cant was on the carriage and the hooks were loosened the carriage started. There is nothing that justifies the claim that the mill company ought to have had rules; that they ought to have had some bell or signal, or method of notifying the party that the carriage was going to start, independently of the practice and of what was reasonable,— what a reasonably prudent man would have supposed, and what the course of business warranted him in knowing was the way in which the mill was operated. The duty was enjoined upon Riley Rearick, not by rules,—that makes no difference,—but the duty was enjoined upon him by law, to be careful. The mill company could not have made that duty any stronger than the law makes it. The law devolves upon him the duty to exercise reasonable care in his conduct in the operation of that saw, and what is reasonable care is a question for your determination. The law also enjoined upon the plaintiff himself the exercise of reasonable care. He was not to trust wholly to Riley Rearick. He must look out for himself. It was a hazardous employment he engaged upon, and he must exercise reasonable care himself, and the law enjoined that duty upon him. The law enjoined

upon each of these parties the duty to be careful in their respective employments; each to look out for himself, and each to look out for his co-employés as far as circumstances would permit,—as far as it could be reasonably expected of them under the circumstances; and, if the company had enjoined that duty by rules, it would have made the duty no more obligatory than the law makes it. It would not have strengthened the obligation which the law imposed upon these parties in that respect. So, then, gentlemen, if Riley Rearick was a careless man, and if the company knew that he was a careless man, either from general reputation or from notice of specific acts of carelessness coming to it, and if, being so careless, Riley Rearick was careless at the time of this accident, and the plaintiff himself was not careless at the time of the accident,—was in the exercise of due care,—if you find all these things concurring, then you may find a verdict for the plaintiff, and it will be your duty to do so. Otherwise your verdict should be for the defendant."

That instruction was approved upon the former hearing in this court. It was again given upon the second trial. We think it covers the whole ground of the duty of the defendant in error and of Rearick toward the plaintiff in error in the premises.

Error is assigned to the following instruction:

"If you find that Riley Rearick was habitually negligent or was a careless man, and that the company had notice of that, or that the facts and circumstances are such that the company ought to have known it, and that the plaintiff did not know it (and there is no charge here that the plaintiff did), and that because of such negligence the plaintiff was injured, that negligence on his part contributing to the injury, your verdict should be for the plaintiff; otherwise it should be for the defendant."

And to the instruction given when the jury came in for further instructions, as follows:

"If you find, first, that this accident is the result of his negligence; second, if you find that he was an habitually careless man; third, if you find that the defendant knew that he was an habitually careless man, or ought to have known it under the circumstances,—these three things concurring, your verdict should be for the plaintiff; otherwise it should be for the defendant."

It is contended that there was error in these instructions, in that the court charged the jury that in order to find a verdict for the plaintiff they must find that Rearick was habitually careless, and in so doing required the jury to find more than the law required; that the use of the word "habitually" as it was employed by the court was erroneous; that to sustain his cause of action the plaintiff was required to prove no more than that Rearick was less careful than a person of ordinary care. In his complaint the plaintiff in error had alleged that Rearick was "habitually careless and negligent," and that the defendant in error knew that fact. The instruction to the jury must be viewed in the light of the pleadings and the evidence upon which it was based. It was given with reference to four specified accidents occurring in a period of five years, concerning which the court reviewed the evidence and commented thereon, and concluded in these words: "These are the several incidents and accidents, if you may term them such, relied upon by the plaintiff as showing that Rearick was habitually careless and negligent." The attention of the jury was thus directed to those incidents, and it was upon such evidence, if at all, that they were to find that Rearick was habitually careless. If counsel for the plaintiff in error considered that the charge was open to objection on account

of the use of the word "habitually," they should in their exception have directed the attention of the court thereto. Their exception to the charge was general. It did not advise the court of the nature of the objection. Undoubtedly the court would have corrected the language of the charge if it was calculated to mislead the jury and the court's attention had been directed specifically to it.

But there is another reason why we think the instruction was not reversible error. The trial court upon the motion for a new trial held that there was not sufficient evidence in the case to sustain a finding that the defendant in error knew that Rearick was careless. The court observed: "In this case the evidence in the particulars mentioned was so slight and unsatisfactory that it would have been the duty of the court to set aside the verdict if there had been one.".

We find no error for which the judgment should be reversed. It is accordingly affirmed.